1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  WILLIE IVY,                          No. CIV S-10-0953-CMK

12            Plaintiff,

13      vs.                              MEMORANDUM OPINION AND ORDER

14  COMMISSIONER OF SOCIAL
    SECURITY,
15
              Defendant.
16
    _____/
17

18            Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20  Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21  judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Pending

22  before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-

23  motion for summary judgment (Doc. 16).

24  / / /

25  / / /

26  / / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on February 28, 2007.  He claims that disability began on March 20, 2007, and that disability is caused by a combination of severe degenerative arthritis, diabetes, hepatitis C, lower back pain and deterioration, and depression. Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on August 19, 2008, before Administrative Law Judge ("ALJ") Sandra K. Rogers.   In a February 4, 2009, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairments: osteoarthritis of the left hip, depression, and a history of drug use;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment set forth in the regulations;

3. The claimant has the residual functional capacity to perform the full range of sedentary work; and

4. Considering the claimants, age, education, work experience, residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on February 24, 2010, this appeal followed.

# II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below:

August 8, 2005 – Treatment records indicate that plaintiff refused medication for hepatitis C and that he was not taking his diabetes medications.

June 1, 2006 – Treatment records indicate that plaintiff had been in prison the past year.  On physical examination, the doctor noted no abnormal test results.  Plaintiff was told to continue with his medications.

/ / /

September 1, 2006 – Treatment notes indicate that plaintiff presented with complaints of severe left hip pain.  Plaintiff was not in any acute distress at the time of the examination which revealed no abnormal findings.

February 3, 2007 – Treatment notes indicate that plaintiff was not in compliance with diabetes medication.  There was no abdominal pain reported.  On physical examination, findings were normal except for "pain at groin area with L hip rotation."  Plaintiff was referred to an orthopedic specialist per his request.  Plaintiff also stated that he was still using heroine and that he was not ready to quit.

March 7, 2007 – Treatment notes from treating doctor Dhiren Nanavati, M.D., reflect that plaintiff presented with complaints of left hip pain.  Plaintiff reported that he can "do household ambulation with minimal pain."  The doctor reported that plaintiff's left hip only hurt after prolonged walking and that he is up at night only "sometimes."  Dr. Nanavati expressed the opinion that plaintiff was "not employable in the near future" due to severe arthritis in the left hip, mild arthritis in the right hip, "and other medical issues."

March 27, 2007 – Plaintiff submitted a Function Report.  In describing his typical day, plaintiff stated his mother has to help him out of bed in the morning due to leg stiffness.  He also stated that his mother prepares his breakfast.  Plaintiff stated that his mother also assists him with drying off after a shower and dressing.  He stated that he alternates among sitting, standing, and limited walking throughout the day "since I cannot do each of them for long periods of time."  According to plaintiff, he does not care for any other people or for any animals.  Plaintiff stated that his condition affects his sleep because he does not sleep through the night due to pain and stiffness.  As to housework and yardwork, plaintiff stated that he can water the lawn but only for short periods of time because he must alternate between sitting and standing or walking due to pain.  He does this about once a month for 15 to 20 minutes.  Plaintiff did not indicate whether he does any other household chores.  As to money, plaintiff stated that, while he can pay bills, count change, and handle a savings account, he is unable to handle a checking account due to

poor memory.  Plaintiff stated that he cannot lift, squat, bend, stand, reach, walk, sit, kneel, or climb due to pain in his hip and lower back.  He added that he has difficulty with memory, concentration, completing tasks, understanding, following instructions, and getting along with others due to poor memory.  Plaintiff also stated that he uses a cane though it was not prescribed.

March 28, 2007 – Plaintiff's mother, Queen Ivy, submitted a Third Party Function Report.  Her report is essentially the same as plaintiff's report, discussed above.

April 21, 2007 – Agency examining psychiatrist Bradley Daigle, M.D., conducted a comprehensive psychiatric examination.  Plaintiff's chief complaint at the time was of hip pain. Plaintiff reported that he had been a heroine user but had not used the drug since May 2006. Plaintiff denied feelings of hopelessness or helplessness.  Plaintiff was not taking any psychiatric medications at the time.  As to daily activities, Dr. Daigle reported:

> He currently lives in Stockton with his mother.  He has a girlfriend who is unemployed.  He has a valid driver's license.  He drives a motor vehicle without particular problems.  He is able to take buses.  He goes out alone without any reported difficulty.  He takes care of his own self-care.  He does light housekeeping and chores.  He handles his own bills and money. He likes to go fishing and he goes to church regularly. . . .

Following an unremarkable mental status examination, Dr. Daigle was not able to offer any psychiatric diagnosis and assigned a global assessment of functioning ("GAF") score of 70 out of 100.  Dr. Daigle concluded that plaintiff ". . . does not have a serious psychiatric problem but only minor depression which is currently completely untreated."  Dr. Daigle noted only slight limitations in plaintiff's ability to: (1) relate to and interact with supervisors, co-workers, and the public; (2) associate with day-to-day work activity including attendance and safety; and (3) adapt to the stresses common to a normal work environment.

May 31, 2007 – Agency examining doctor Satish Sharma, M.D., conducted a comprehensive internal medicine examination.  Dr. Sharma recorded the following history:

> The claimant is a 44-year-old black male who is complaining of low back pain for the last several years.  The back pain at times radiates to lower extremities.  He does not give any history of trauma to the back.  He also

4

gives a history of intermittent numbness in the lower extremities.  Says anytime he stands, walks, lifts anything, bends, or sits in one position for long periods of time, he has low back pain.

He also has history of hepatitis C.  He was diagnosed about four years back.  Says he had the liver biopsy but has not been started on interferon treatment.  He denies ever being a heavy alcohol user.  He complains of increased fatigue, also gives history of recurrent nausea and abdominal cramps.

He also is a known case of diabetes for the last four years.  He denies any hospitalization for control of diabetes.  He complains of increased fatigue, says mild exertion makes him tired.  He gives a history of decreased vision, denies ever having any laser treatment for diabetic retinopathy.

He also complained of left hip pain.  He says he is having left pain for the last several years, getting progressively worse.  He does not give any history of injury to the hip.  He had x-ray of bilateral hips done in February 2007, which showed degenerative changes in both hips, left worse than the right.  On the left, there is a severe superolateral joint space narrowing with subchondral cyst formation, marginal osteophytes, and subchondral sclerosis.  Mild degenerative changes are noted on the right with mild degenerative osteophytes.  There is no fracture or destructive bone lesion.  Sacroiliac joints and symphisis pubis are normal.  He says his doctors have told him that he has severe arthritis in the hip and he needs a hip replacement.  Says anytime he bears weight on the lower extremities, he has pain in the left hip.

Following a physical examination, Dr. Sharma offered the following functional capacity assessment:

Based upon today's physical examination and observations, he has limitations in lifting to 10 pounds frequently and 20 pounds occasionally.  Standing and walking limited to 6 hours per day with normal breaks.  Bending and stooping should be done occasionally.  Sitting limited to 6 hours per day.  No limitation in holding, feeling, or fingering the objects.  No limitation in speech, hearing, or vision.

June 6, 2007 – Agency consultative doctor Melvin Morgan, M.D., submitted a Psychiatric Review Technique form.  The doctor concluded that plaintiff has a non-severe affective disorder, as well as a substance addiction disorder.  No difficulties with activities of daily living or in maintaining social functioning were noted.  Dr. Morgan did note, however, mild limitation with concentration/persistence/pace.  No episodes of decompensation were noted.

///

1           June 22, 2007 – Agency consultative doctor R.D. Fast, M.D., submitted a Physical

2      Residual Functional Capacity assessment.  Dr. Fast opined that plaintiff could occasionally lift 20

3      pounds and frequently lift 10 pounds.  Plaintiff could stand/walk at least 2 hours in an 8-hour

4      day, and could sit for about 6 hours in an 8-hour day.  Plaintiff's ability to push/pull was assessed

5      as limited in the lower extremities due to "severe arthritis left hip, decreased ROM w/ pain,

6      limping gait, low back tenderness, reduced flexion."  Dr. Fast specifically recommended "no

7      forceful push/pull LLE."  As to postural limitations, Dr. Fast opined that plaintiff could

8      frequently balance, kneel, and crawl, but only occasionally climb, stoop, or crouch.  No

9      manipulative, visual, communicative, or environmental limitations were noted.

10          July 21, 2008 – Agency examining doctor Les P. Kalman, M.D., Psy.D.,

11     performed a psychiatric evaluation.  Plaintiff reported the following complaints:

12          . . . He went on to report "some days I feel OK.  Some days I don't feel
            like being around.  Unhappy, depressed a lot.  Thinking about life."  He

13          states that he's been feeling sad, depressed for about a year.  He described
            the symptoms as just feeling sad, crying.  He reports he tends to isolate.  "I

14          don't want to be bothered by people."  He states all this has been going on
            for about a year and he attributes it to his medical condition.  Prior to the

15          medical condition, emotionally he thinks he was OK.

16     Following a mental status examination, the doctor diagnosed adjustment disorder secondary to

17     medical problems and assigned a GAF score of 52.

18          Dr. Kalman also submitted a medical source statement in which he identified

19     moderate limitations in the following areas of functioning: (1) ability to understand and

20     remember detailed instructions; (2) ability to carry out detailed instructions; and (3) ability to

21     accept instructions and to respond appropriately to criticism from supervisors.  In all other areas,

22     plaintiff was assessed as either mildly limited or not significantly limited.  Dr. Kalman opined

23     that plaintiff would be unable to complete a normal workday due to psychiatric interruptions

24     more than three or four times per month.

25     / / /

26     / / /

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### IV.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to properly consider the opinion of agency examining psychiatrist Dr. Kalman; (2) the ALJ failed to properly consider the opinions of plaintiff's treating physicians; (3) the ALJ failed to consider all impairments at Step 2 of the sequential evaluation process; (4) the ALJ erred in finding plaintiff's testimony not credible; (5) the ALJ improperly rejected lay witness evidence; (6) the

jobs the ALJ concluded plaintiff could perform are beyond plaintiff's true residual functional capacity; and (7) the vocational expert failed to state whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT").

### A.   Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff contends that the ALJ erred with respect to her analysis of the opinion provided by agency examining psychiatrist Dr. Kalman as well as those of treating physicians Drs. Nanavati and Barnes.  More specifically, plaintiff argues that the ALJ was required to re-contact the treating physicians in order to clarify their opinions.

1.    Dr. Kalman

As to Dr. Kalman, the ALJ stated:

In July 2008, the claimant presented for a one-time evaluation with Les Kalman, M.D., a psychiatrist.  Dr. Kalman diagnosed an adjustment disorder with depressed mood secondary to general medical condition and assigned a Global Assessment of Functioning score (GAF) of 52, which suggests that he believed the claimant was experiencing only moderate symptoms or moderate limitations in functioning (Ex. 11F).  The claimant reported a typical day to include sitting around the house talking to his mom and reading the paper (Ex. 11F/4).  Dr. Kalman completed a medical source statement wherein he assessed moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors.  He further indicated the claimant would be absent from work more than three to four times per month.

The undersigned has considered Dr. Kalman's assessment in arriving at the claimant's residual functional capacity, but has afforded his assessment little weight.  Although Dr. Kalman examined the claimant on only one occasion in July 2008, he opined that these mental limitations dated back to 2007.  This assertion is unsupported by the remainder of the record, which reflects the claimant reported only a "little depression" on December 7, 2007, and discloses no signs or symptoms of depression prior to that (Ex. 12F/4).  Hence, his assessment is rejected as it relates to the period prior to July 2008.  For the period prior to July 2008, the record establishes no severe mental limitations, as Drs. Daigle, Morgan, and Tashjian agreed.

Furthermore, Dr. Kalman's conclusions as to the claimant's limitations since July 2008, are afforded little weight, as his assessment does not

relate to a continuous period of twelve months in duration and there is no indication from the record that the claimant's limitations would persist at that severity with appropriate mental health treatment. The claimant has never sought or received treatment for depression. With the exception of this one-time examination, he has exhibited no significant abnormalities on mental status examination. More specifically, the clinical findings of Dr. Kalman and the remainder of the treatment records provide no basis for Dr. Kalman to draw an inference concerning absenteeism at the rate he assessed. Rather, it appears that Dr. Kalman relied primarily upon the claimant's subjective complaints in arriving at his conclusions. In sum, there is no basis to conclude that his depression would prove unresponsive to appropriate treatment or that it would remain at this severity for a period of twelve continuous months.

Plaintiff argues that the ALJ erred in rejecting Dr. Kalman's assessed limitations and that, had Dr. Kalman's opinion been properly credited, he would be found disabled.

As discussed above, a contradicted opinion of an examining professional may be rejected where the ALJ cites specific and legitimate reasons supported by substantial evidence. See Lester, 81 F.3d at 830. Here, the court finds that the ALJ has properly done so, citing at least two specific and legitimate reasons. First, the ALJ rightfully questioned the validity of Dr. Kalman's opinion that plaintiff's mental disorder dated back to 2007 even though he only examined plaintiff once in 2008, Dr. Daigle examined plaintiff in April 2007 and noted that plaintiff has no serious psychological problems and only mild limitations, and Dr. Morgen opined in June 2007 that plaintiff has no more than mild limitations associated with a mental disorder. Second, the ALJ correctly observed that despite Dr. Kalman's assertion as to the duration of plaintiff's mental disorder, the longitudinal record fails to demonstrate any complaints of serious depression or any mental health treatment.

2.    Drs. Nanavati and Barnes

As to Drs. Nanavati and Barnes, the ALJ stated:

In contrast to these assessments [by Drs. Sharma, Fast, and Friedman], on March 7, 2007, Dhiren Nanavati, M.D., one of the claimant's treating doctors, opined the claimant was not employable in the near future (Ex. 1F/10). Similarly, a hand-written note from G. Barnes, M.D., another of the claimant's doctors, indicates the claimant had been under a disability since August 2006 due to degenerative joint disease of the left hip (Ex. 1F/9). However, neither physician described any specific functional

1  limitations.

2  Ordinarily, a treating physician's opinion is afforded considerable weight.
   However, a treating physician's opinion on an issue ultimately reserved to
3  the Commissioner, such as the issue of disability, is entitled to no special
   significance (Social Security Ruling 96-5p).  Rather, it must be weighed in
4  light of the other evidence of record.  In this case neither physician
   described any specific functional limitations related to standing or walking
5  or any other activity.  Nor did they prescribe a cane for ambulation.  In
   fact, the claimant admitted to Dr. Nanavati that he could walk around his
6  house with minimal pain but did have trouble with prolonged ambulation.
   The claimant's arthritis, though severe, was treated conservatively.  A
7  limitation to two hours of standing or walking is reasonable in light of the
   claimant's subjective complaints of pain with prolonged walking and is
8  consistent with the assessments of Drs. Fast and Friedman.  In fact, Dr.
   Sharma believed the claimant could stand or walk for up to six hours in an
9  eight-hour day.  In sum, because the conclusions of Drs. Barnes and
   Nanavati are not well supported by the remainder of the record, they are
10 rejected.

11  Plaintiff argues that this analysis is flawed because, to the extent the ALJ rejected the treating

12  doctors' findings because the doctors did not describe any specific functional limitations, the

13  ALJ was required to develop the record by recontacting the doctors "to obtain the evidence [the

14  ALJ] needed."

15       The ALJ has an independent duty to fully and fairly develop the record and assure

16  that the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th

17  Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be

18  especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously

19  and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v.

20  Califano, 587 F.2d 988, 991 (9th Cir. 1978).   Ambiguous evidence or the ALJ's own finding that

21  the record is inadequate triggers this duty.  See  Tonapetyan, 242 F.3d at 1150.  The ALJ may

22  discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting

23  questions to the claimant's physicians, continuing the hearing, or keeping the record open after

24  the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d

25  599, 602 (9th Cir. 1998)).

26  ///

1  The court does not agree with plaintiff that the ALJ was required to recontact Drs.

2  Nanavati or Barnes.  The evidence was neither ambiguous nor inadequate for the ALJ to

3  accurately determine that the doctors' conclusions are not supported by the record as a whole.

4  Specifically, though Drs. Nanavati and Barnes opined very generally that plaintiff was disabled,

5  their own objective observations (where they are noted) are inconsistent with the existence of a

6  totally disabling condition or combination of conditions.  Moreover, plaintiff's course of

7  treatment was consistently conservative and the evidence indicates that plaintiff often times was

8  not in compliance with even this conservative treatment.

9  **B.    Step 2 Severity Determination**

10  In order to be entitled to benefits, the plaintiff must have an impairment severe

11  enough to significantly limit the physical or mental ability to do basic work activities.  See 20

12  C.F.R. §§ 404.1520(c), 416.920(c).[1]   In determining whether a claimant's alleged impairment is

13  sufficiently severe to limit the ability to work, the Commissioner must consider the combined

14  effect of all impairments on the ability to function, without regard to whether each impairment

15  alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir.

16  1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment,

17  or combination of impairments, can only be found to be non-severe if the evidence establishes a

18  slight abnormality that has no more than a minimal effect on an individual's ability to work.  See

19  Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.

20  1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the

21  impairment by providing medical evidence consisting of signs, symptoms, and laboratory

22  findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone

23

24  [1]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing,
pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,

25  carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes

26  in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1   is insufficient.  See id.

2          Plaintiff ". . . wonders why the ALJ made no mention of diabetes at Step 2"

3   despite plaintiff's difficulties with blood sugar levels.  Plaintiff also complains that the ALJ made

4   no finding with respect to his hepatitis C.  Finally, plaintiff argues that the ALJ erred with respect

5   to her analysis of plaintiff's depression.

6          1.   Diabetes

7          As to diabetes, the ALJ stated:

8          The claimant has a history of diabetes mellitus dating back to his alleged
           onset date (Ex. 1F/1), evidenced by elevated blood glucose levels.  His
9          blood glucose levels were monitored and medications such as Glyburide
           and Metformin were prescribed for treatment of the disease.  His blood
10         sugar level was uncontrolled in February 2007, but he was not taking his
           prescribed medications at the time (Ex. 2F/8).  Overall, it appears that the
11         disease was fairly well controlled when he took his medications as
           prescribed, and there is no evidence of end-organ damage resulting from
12         the disease (Exs. 1F, 2F, 12F).

13  To answer plaintiff's question, the ALJ correctly omitted diabetes as a severe impairment

14  because the record contains no evidence that diabetes has more than a minimal effect on

15  plaintiff's ability to work.  Though plaintiff may have had difficulties with blood sugar levels, no

16  doctor ever opined that diabetes significantly limited plaintiff's capabilities.  Additionally, the

17  evidence consistently shows that plaintiff's diabetes was well-controlled during times he was

18  compliant with his medications.

19         2.   Hepatitis C

20         As to hepatitis C, the ALJ stated:

21         The claimant also has a history of hepatitis C dating back to his alleged
           onset date, but he declined treatment for the condition in the past (Exs. 1F
22         and 12F).  His liver functioning was monitored periodically, but the
           disease appeared relatively asymptomatic despite the lack of treatment.
23         Physical examination findings were generally within normal limits with no
           abdominal pain, organomegaly, nausea, or vomiting reports (Ex. 2F/7).
24         Though Dr. Timothy Coates noted mild abdominal tenderness on
           examination in November 2007, and complaints of fatigue on examination
25         in December 2007, his records included no abnormal liver function studies
           or liver biopsy results.  Dr. Coates deferred treatment pending his review
26         of a previous liver biopsy reportedly done in 2003.

13

1    Again, the court finds that the ALJ properly concluded that plaintiff's hepatitis C was not a

2    severe impairment.  As the ALJ observed, plaintiff remained asymptomatic despite his refusal to

3    accept any treatment for hepatitis C.

4                    3.      Depression

5                    Plaintiff argues that the ALJ failed to make findings with respect to the four

6    functional areas of daily living, social functioning, persistence/pace/concentration, and episodes

7    of decompensation (the "paragraph B" criteria).  The court rejects this argument because the

8    hearing decision clearly reflects that the ALJ made specific findings in each functional area.

9    Specifically, the ALJ concluded that plaintiff has mild limitations in activities of daily living,

10   mild limitations in social functioning, mild limitations in persistence/pace/concentration, and no

11   episodes of decompensation.

12                   Plaintiff asserts that these findings are insufficient because they are cursory and

13   fail to refer to the relevant medical evidence supporting the findings.  A review of the hearing

14   decision reflects that the ALJ referenced evidence discussed elsewhere in the decision in support

15   of her paragraph B criteria findings.  Noting her discussion later in the opinion, the ALJ stated:

16   "[T]he following residual functional capacity assessment set forth below reflects the degree of

17   limitations the undersigned has found in the 'paragraph B' mental function analysis."  The

18   residual functional capacity discussion, in turn, contains a detailed discussion of the relevant

19   medical evidence of record supporting the ALJ's paragraph B criteria findings.  Therefore, the

20   court rejects plaintiff's argument that the ALJ failed to refer to the relevant medical evidence in

21   making these findings.

22                   Finally, the court finds that the ALJ's conclusion that depression is not a disabling

23   impairment is supported by the record.  In particular, plaintiff never sought any kind of mental

24   health treatment, nor did he consistently take medications for any psychiatric condition.  Further,

25   with the exception of Dr. Kalman, whose opinion is discussed above, every mental health

26   professional who either examined plaintiff or reviewed his medical records concluded that

1    plaintiff has, at worst, an adjustment disorder secondary to his physical complaints.

2    **C.      Plaintiff's Credibility**

3            The Commissioner determines whether a disability applicant is credible, and the

4    court defers to the Commissioner's discretion if the Commissioner used the proper process and

5    provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

6    credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

7    F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

8    821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

9    and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

10   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

11   credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

12   1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

13   and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

14           If there is objective medical evidence of an underlying impairment, the

15   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

16   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

17   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

18           The claimant need not produce objective medical evidence of the
             [symptom] itself, or the severity thereof.  Nor must the claimant produce
19           objective medical evidence of the causal relationship between the
             medically determinable impairment and the symptom.  By requiring that
20           the medical impairment "could reasonably be expected to produce" pain or
             another symptom, the Cotton test requires only that the causal relationship
21           be a reasonable inference, not a medically proven phenomenon.

22           80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
             Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
23

24   / / /

25   / / /

26   / / /

1          The Commissioner may, however, consider the nature of the symptoms alleged,

2   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

3   947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

4   claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

5   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

6   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

7   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

8   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

9   claimant cooperated during physical examinations or provided conflicting statements concerning

10  drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

11  claimant testifies as to symptoms greater than would normally be produced by a given

12  impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

13  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

14          Regarding reliance on a claimant's daily activities to find testimony of disabling

15  pain not credible, the Social Security Act does not require that disability claimants be utterly

16  incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

17  repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . .

18  does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

19  Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

20  Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

21  claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

22  restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

23  claimant was entitled to benefits based on constant leg and back pain despite the claimant's

24  ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

25  activities are not easily transferable to what may be the more grueling environment of the

26  workplace, where it might be impossible to periodically rest or take medication").   Daily

activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Plaintiff argues that the ALJ's analysis of his credibility constituted a "cart-before-the-horse approach" which failed to state clear and convincing reasons. As to plaintiff's credibility, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> While the undersigned is sympathetic with the difficulties that the claimant is experiencing, they do not support a conclusion of "disability" under the Act. The undersigned has considered the claimant's allegations of pain, excess pain, and limitations pursuant to the law of the Ninth Circuit Court of Appeals, Social Security Ruling 96-7p, and the pertinent regulations, but his allegations of disability are not credible to the extent alleged.
>
> For the reasons set forth below, the undersigned rejects the claimant's allegations of disability to the extent they are inconsistent with the above residual functional capacity assessment. First, diabetes mellitus and hepatitis C appear to have been relatively asymptomatic, as the claimant seldom reported symptoms related to these conditions to his physicians. Second, no assistive device was medically prescribed for walking, despite the claimant's left hip pain. Third, though the claimant alleged memory and concentration difficulties, he demonstrated memory or concentration difficulties on only one examination, which occurred in July 2008. The records fail to document a longitudinal history of severe depression. Fourth, even though the claimant alleges disabling hip pain, he does not exhibit atrophy. Fifth, the claimant's course of treatment has reflected a conservative approach. In fact, he has not sought or received treatment for depression and has declined treatment for hepatitis C. Sixth, the record does not indicate the claimant suffers from debilitating side effects from his medications. Seventh, the claimant's activities contradict his allegations of disabling limitations to [the] extent alleged. At the hearing, he admitted he could attend to his personal hygiene, make the bed, and clean up after himself. He further related he is able to drive, though he does not have a car. Similarly, he reported to Dr. Daigle that he took care of his own self-care, did light housekeeping chores, handled his own bills

17

and money, liked to go fishing, and attended church regularly (Ex. 3F/3). On March 7, 2007, the claimant reported he could walk about his household with only minimal pain (Ex. 1F/10). These activities are consistent with a sedentary level of exertion. It is also significant to note that in June 2006, the claimant reported that he did yard work, swam, and played basketball at a rate of four to five times per week for up to an hour at a time, evidencing he had a capacity for far greater than sedentary activity only nine months prior to his amended alleged disability onset date (Ex. 2F/4). Eighth, the claimant has made inconsistent statements concerning heroine abuse, admitting to ongoing use to Dr. Jiang and denying ongoing use to Dr. Daigle, which reflects poorly on his credibility. Consequently, the claimant's allegations are not considered credible to the extent alleged.

The court finds no error in the ALJ's analysis. Specifically, as the ALJ noted, plaintiff's credibility as to all of his statements is rightfully called into question given the inconsistent statements he made concerning heroine use. See Smolen, 80 F.3d at 1284.

### D.    Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

Plaintiff argues that the ALJ failed to provide reasons germane to the witness in rejecting evidence of plaintiff's functioning provided by plaintiff's mother, Queen Ivy. The record contains a Third-Party Function Report submitted by Ms. Ivy. As to this report, the ALJ stated:

The undersigned has also considered the third party statements of the claimant's mother, who is not a medical professional (Ex. 8E). Her statements concerning the claimant's daily activities essentially mirror those of the claimant. Although she indicates that she assists him with getting out of bed, dressing, and bathing, no physician has indicated there

is a medical need for such assistance.  Likewise, she indicated that the
claimant needed to use a cane to walk, but she conceded that a physician
had not prescribed it.  Hence, to the extent her statements are inconsistent
with the residual functional capacity above, they are rejected for the same
reasons the claimant's allegations have been rejected.

The court rejects plaintiff's argument that the ALJ improperly considered Ms. Ivy's statements.

The reasons germane to Ms. Ivy are the same reasons which are germane to plaintiff in rejecting

his statements.  Plaintiff cites no authority in support of his apparent position that, where the

same reasoning applies to two witnesses, the ALJ must repeat those reasons in separate

discussions for each witness.  Plaintiff would essentially put form over substance, which the

court declines to do.

### E.   <u>Vocational Determination</u>

In cases such as this one where the Medical-Vocational Guidelines ("Grids") set

forth in the regulations are not fully applicable, the ALJ may meet his burden under step five of

the sequential analysis by propounding to a vocational expert hypothetical questions based on

medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.

See <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Grids are

inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to

obtain vocational expert testimony.  See <u>Burkhart v. Bowen</u>, 587 F.2d 1335, 1341 (9th Cir.

1988).

Regarding the vocational determination, the ALJ stated:

Based on a residual functional capacity for the full range of sedentary
work, considering the claimant's age, education, and work experience, a
finding of "not disabled" is directed by Medical-Vocational Rule 201.18.
Illustrations of unskilled sedentary jobs were identified by the vocational
expert as follows: order clerk. . ., charge account clerk. . ., and
addresser. . . .  Furthermore, even when asked to assume a hypothetical
individual restricted to sedentary work activity with the mental limitations
addressed by Dr. Kalman, the vocational expert opined that these unskilled
jobs could be performed with the limitations described by Dr. Kalman
with the exception of the rate of absenteeism. . . .

///

1   Plaintiff argues that the jobs identified by the ALJ are not within his true residual functional

2   capacity.  Plaintiff also argues that the ALJ erred by failing to elicit testimony from the

3   vocational expert that the jobs he identified comply with definitions set forth in the DOT.

4                   1.      Jobs Identified by the ALJ

5                   Plaintiff argues that the ALJ identified jobs which require a higher reasoning

6   ability than allowed by a limitation to jobs with no more than two steps.  As defendant accurately

7   notes, however, the ALJ made no determination that plaintiff is limited to performing jobs with

8   only simple instructions involving no more than two steps.  According to plaintiff, Dr. Daigle

9   emphasized "simple" in describing plaintiff's ability to perform work activities.  Plaintiff

10  concludes from this that Dr. Daigle was of the opinion that he can perform only simple work.

11  This, however, is not an accurate reading of Dr. Daigle's report.  While plaintiff is correct that

12  Dr. Daigle opined that plaintiff is not significantly limited in his ability to perform jobs involving

13  simple instructions, Dr. Daigle also concluded that plaintiff was not significantly limited in his

14  ability to follow detailed and complex instructions.  Thus, it was Dr. Daigle's opinion that

15  plaintiff could perform work at any level of complexity.[2]  Plaintiff's argument flows from an

16  inaccurate reading of Dr. Daigle's assessment.

17                  2.      Compliance with DOT Definitions

18                  Building on the preceding argument, plaintiff contends that "[t]he above

19  anomalies illustrate the importance of asking the VE whether his testimony comports with the

20  DOT, and, if not, determining the basis for the deviation."  The court rejects this argument

21  because, even if the ALJ had been required to inquire of the vocational expert whether identified

22  jobs comport with the DOT definitions, the ALJ was not required to rely on vocational expert

23  testimony in the first place.  In this case, plaintiff's residual functional capacity for the full range

24  of sedentary work and the lack of any established non-exertional limitations permitted the ALJ to

25

26          [2]          Only Dr. Kalman, whose opinion is discussed above, disagreed.

1  rely exclusively on the Medical-Vocational Guidelines in determining disability. See Jones v.

2  Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5

3  (1983). The ALJ appears to have obtained vocational expert testimony in an abundance of

4  caution.

5

6                                    **V. CONCLUSION**

7          Based on the foregoing, the court concludes that the Commissioner's final

8  decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY

9  ORDERED that:

10          1.     Plaintiff's motion for summary judgment (Doc. 15) is denied;

11          2.     Defendant's cross-motion for summary judgment (Doc. 16) is granted; and

12          3.     The Clerk of the Court is directed to enter judgment and close this file.

13

14  DATED:  May 24, 2011

15

16                                    _____
                                      **CRAIG M. KELLISON**
                                      UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26